**The Howard Bank v. The Lotus-Duvet Company, Inc., James Garland, Leighton Hazlehurst and Patricia Hazlehurst**

[610 A.2d 562]

No. 91-022

Present: **Gibson, Dooley, Morse** and **Johnson, JJ.**

Opinion Filed May 8, 1992

*Robert A. Gensburg* of *Gensburg Axelrod & Adler,* St. Johnsbury, for Plaintiff-Appellee.

*Spencer R. Knapp* and *Noah Paley* of *Dinse, Erdmann & Clapp,* Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant James Garland appeals a superior court judgment of $49,987 in favor of plaintiff, The Howard Bank. The judgment represents the balance due on two loans the bank made to defendant's company, Lotus-Duvet Co., Inc., before he purchased it in 1985. Defendant argues he was not liable for the debt and that the bank should not have been allowed to proceed against him under the rights of the company's former owners. We affirm.

The dispute arose as follows. In 1983 and 1984, the bank made two loans totalling $200,000 to Lotus-Duvet. The loans were guaranteed by the company's owners, Leighton and Patricia Hazlehurst, who also delivered to the bank a mortgage on their home as partial security. In November 1985, the Hazlehursts sold their stock in the company to defendant for $1. The sale was made under an agreement that left the Hazlehursts' mortgage and guarantees in place, subject to defendant's promise to take the steps necessary to have them discharged by January 15 and March 1, 1986, respectively. In a separate agreement signed the same day, the bank consented to the sale, and agreed to release the Hazlehursts from their obligations if defendant made payments of $50,000 and $20,000 by the specified dates. Defendant paid $20,000 on January 15, and the bank mistakenly discharged the mortgage. It also assured the Hazlehursts that they had no reason to be concerned about their guarantees. Defendant, however, failed to complete the required payments, and the loans went into default.

In October 1986, the bank sued the Hazlehursts, Lotus-Duvet, and defendant. It sought the balance due on the notes, approximately $162,000, from the company and the Hazlehursts, and $50,000 from defendant for his breach of the sales agreement. The Hazlehursts filed a counterclaim seeking substantial damages. They alleged that the bank's misrepresentations had caused them to forego taking action against defendant and the company to protect their interests. They also filed a cross-claim against defendant, alleging that his failure to make the pay-

ments required under the sales agreement entitled them to recover from him any amount found due from them to the bank. Defendant and the company failed to respond to the bank's suit, leading to default judgments against them of $50,000 and the balance due, respectively, of which the bank recovered $62,000 by selling the company's assets. Defendant answered the cross-claim, denying liability to the Hazlehursts.

As trial approached, the bank and the Hazlehursts settled their differences: the Hazlehursts acknowledged indebtedness of $49,987 (the balance on the notes remaining after the judgment against defendant and the sale of Lotus-Duvet's assets), dropped their counterclaim, and assigned to the bank their claim against defendant. In return, the bank released the Hazlehursts from any liability in connection with the loans and agreed to pay their legal fees. The bank then proceeded to trial against defendant on the Hazlehursts' cross-claim, and won the judgment from which he now appeals. The court found defendant had become liable for the debts of Lotus-Duvet under the sales agreement and that the Hazlehursts' assignment to the bank of their claim against defendant was valid.

I.

Defendant first argues that he never became liable for repayment of the notes, and that the Hazlehursts thus had no claim to assign to the bank. He cites the 1985 sales agreement, which reads in part:

2. *Consideration.*

. . . .

b. Garland and the Company will take all action required by the Bank to discharge the Mortgage on or before, but in no event later than, January 15, 1986; and

c. Garland and the Company will make reasonable efforts to have the Hazlehursts removed from the Guarantees on or before January 15, 1986, and [ ] Garland and the Company will take all action required by the Bank, including but specifically not limited to a personal guarantee of Garland, if necessary, to have the Hazlehursts removed from the Guarantees on or before but in no event later than March 1, 1986.

. . . .

> 7. *Covenants of Garland and the Company.* . . . Garland and the Company jointly and severally covenant and agree:
>
> a. To take all necessary and requisite actions to perform the obligations of Garland and the Company to Leighton Hazlehurst and the Hazlehursts under Sections [2.b and 2.c] above.

Defendant argues that the agreement obligated him to take the steps necessary to relieve the Hazlehursts of liability, but did not make him liable for the debt itself. He points to other sections of the agreement where he expressly promised to indemnify and hold the Hazlehursts harmless from liability for the company's taxes, trade debts, and contract obligations. Under the rule of construction that the inclusion of certain language in one part of a document indicates that it was intentionally omitted from a related part, *Mt. Mansfield Television, Inc. v. Farrell*, 126 Vt. 103, 105, 223 A.2d 477, 479 (1966), defendant concludes that he never promised to indemnify the Hazlehursts if they were to be found liable for the company's debt.

The bank counters that defendant's position ignores the cardinal rule of construction, that a document should be interpreted to further the intentions of the parties. See *id.* ("application of the rule depends upon the intention of the parties as it may be discovered from the full text of the contract and the nature of the transaction involved"). The conclusion that defendant is not liable for the debt guaranteed by the Hazlehursts, the bank argues, can rest only on the absurd assumption that the Hazlehursts intended to have no remedy if defendant did not meet his obligations under the sales agreement.

■ We agree with the bank. In light of the nature of the transaction, in which the Hazlehursts sold their company to defendant for $1 and certain promises, the disputed language can only be read to reflect the parties' intention that defendant would relieve the Hazlehursts of any liability to the bank by the spring of 1986. In order to give effect to that intention, defendant must bear the consequences of his failure to do what he promised. Once the Hazlehursts became liable to the bank on the notes, defendant became liable to the Hazlehursts for the same amount.

## II.

■ Defendant next argues that any liability he may have had dissolved when the bank dropped its claim against the Hazlehursts. Because the bank's claim against him for the balance on the notes arose from the Hazlehursts' liability, he claims that as soon as the Hazlehursts escaped liability, he did too. As the court noted, had the bank simply forgiven the debt, it would not have been able to pursue defendant on a derivative claim. The bank did not release the Hazlehursts without charge, however. Rather, it exchanged its right to sue them on a liquidated debt for their counterclaim *and* their right to sue defendant for the same debt.

Defendant cites Vermont law that a surety cannot claim against a principal unless the surety has paid the principal's debt. *Bullard v. Brown*, 74 Vt. 120, 124, 52 A. 422, 423 (1902) (lawyer, his client's surety, "had no right" to recover costs he had not paid); cf. *Hulett v. Soullard*, 26 Vt. 295, 298 (1854) ("If [the surety pays the principal's debt], in any mode, it is, so far as the principal is concerned, equivolent to the payment of money for his benefit . . . ."). In the present case, the Hazlehursts assigned their claim against defendant to the bank instead of first paying the bank and then suing defendant. Under the circumstances, where defendant's ultimate liability for breaching the sales agreement is in little doubt, we hold that the assignment and the forbearance of the Hazlehursts from pursuing their counterclaim against the bank were sufficient payment of a debt owed by defendant to allow the bank to proceed against him in the Hazlehursts' shoes.

*Affirmed.*